**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DALLAS TYLER EWTON,

    Defendant.

Case No. CR-21-252-TDD

**ORDER**

Before the Court is the government's Notice of Intent to Admit Evidence of Other Bad Acts and Motion in Limine to Admit Other Evidence [Doc. No. 62]. Defendant responded in opposition [Doc. No. 75]. The government also filed a supplemental notice [Doc. No. 81]. The Notice and Motion is fully briefed and ripe for decision.

**BACKGROUND**

Defendant stands charged in a seventeen-count indictment containing six charges for aggravated sexual abuse, three charges for sexual abuse of a minor, three charges for sexual abuse of a ward, four charges for abusive sexual contact, and one charge for witness tampering. The government alleges Defendant, a former teacher at Morris Public Schools, sexually abused two minors who were his students at the time of the alleged acts. Victim 1 reported that the abuse started when she was 11 years old and continued for four years. She told agents Defendant digitally penetrated her, performed oral sex on her, and made her perform oral sex on him. Victim 1 also reported that Defendant threatened her life and the lives of her family members if she told anyone about the alleged abuse. Victim 2 reports

1

that Defendant, on separate occasions, tried to grab her breast, touched her vagina, and attempted to follow her into a girl's bathroom at the school.

Before this alleged abuse, Victim 1 reports Defendant told her he wanted to be a father-figure in her life. The government asserts that neither Victim 1 nor Victim 2 had strong father-figures. Victim 1 claims Defendant, to get her to come to his classroom alone, would tell her she was failing his class or that she needed to work on an assignment. Victim 2 claims one of the incidents where Defendant touched her occurred when he was confronting Victim 2 about missing his afterschool tutoring.

## GOVERNMENT'S MOTION

By its motion, the government seeks a determination of admissibility for the proposed testimony of 25 witnesses.[1] Each witness offers either information corroborating some of the reports made by Victim 1 and Victim 2 or testimony about Defendant's other unindicted conduct. The government argues the testimony is admissible as evidence intrinsic to the charged conduct or admissible pursuant to Fed. R. Evid. 404(b) and 414.

## A. Evidence Offered Under Rule 414

Since the government argues Rule 414 applies to testimony offered by only three of the witnesses, the Court will start there. All three witnesses report Defendant's conduct toward them that occurred before they reached the age of 14. First, the government seeks

---

[1] The government identifies the individuals who offer testimony by number. Students 1 through 21 were students of Defendant. The government also offers testimony from people who were not Defendant's students; they are identified as Witnesses 1 through 3. Finally, the government filed a supplemental notice [Doc. No. 81], stating its intent to offer the testimony of R.T., who is also Defendant's former student.

to introduce evidence that Defendant spanked Student 2 on her buttocks in class. Student 2 stated that in 6th or 7th grade Defendant, as a joke, bent female students over his knee in front of the entire class and struck them on the buttocks with his hand or with a yard stick. Student 2 reported that Defendant spanked her buttocks in this manner. She stated she did not remember Defendant doing this to male students. Second, the government seeks to introduce evidence that Defendant tickled Student 13 near her breasts, pinned her to the ground, and sat on her buttocks. Third, the government seeks to introduce evidence that Defendant patted Student 16 on the buttocks as she was leaving his class.

Rule 414 states: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Before evidence of prior child molestation may be considered for admission, the Court must determine (1) the defendant is accused of a crime involving child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving child molestation, and (3) the evidence is relevant. *United States v. Benally*, 500 F.3d 1085, 1090 (10th Cir. 2007).

Under Rule 414, "child" means any person younger than 14. Fed. R. Evid. 414(d)(1). The definition of "child molestation" in Rule 414 includes "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child" and any attempt to engage in such conduct. Fed. R. Evid. 414(d)(2)(A), (E). Under 18 U.S.C. chapter 109A, a "sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an

3

intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Even if the evidence meets these three threshold requirements, it is, nonetheless, "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence if its probative value is substantially outweighed by a risk of unfair prejudice." *Benally*, 500 F.3d at 1090 (internal quotations omitted). "[T]he district court must make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence" and then should consider the following factors:

> 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

*United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

**1. Defendant is accused of offenses of child molestation.**

The first *Benally* requirement is clearly met because the Indictment [Doc. No. 18] charges Defendant with several offenses involving child molestation.

**2. Testimony offered by Student 2, but not Students 13 and 16, is evidence of commission of another offense of child molestation.**

The second requirement—that the evidence proffered is evidence of the defendant's commission of another offense involving child molestation—is not as clear-cut. The Court, nonetheless, finds the testimony offered by Student 2 meets the second *Benally* requirement. Striking a minor student on the buttocks in front of her classmates is an

4

intentional touching of the buttocks with the intent to humiliate or degrade the minor student. Defendant appears to argue he may have had authority to discipline students by spanking them. But the FBI 302 Report of Student 2's interview clearly states she reported that Defendant spanked students as a joke, not for disciplinary purposes.

On the other hand, tickling, sitting on a student's buttocks, and merely patting a student's buttocks in passing, while inappropriate conduct by a schoolteacher, do not meet the definition of "sexual contact" in § 2246(3). Thus, evidence that Defendant tickled Student 13 and sat on her buttocks and evidence that Defendant patted Student 16's buttocks are not admissible through Rule 414.

### 3. Testimony offered by Student 2 is relevant.

For the final *Benally* factor, the Court finds the evidence that Defendant spanked Student 2 is relevant. Relevant evidence is that which "has any tendency to make a fact" of consequence to the determination of the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "A defendant with a propensity to commit acts similar to the charged crime is more likely to have committed the charged crime than another. Evidence of such a propensity is therefore relevant." *United States v. Guardia*, 135 F.3d 1326, 1328 (10th Cir. 1998). Upon consideration, the Court finds that the threshold requirement of relevance is met regarding Defendant's alleged conduct toward Student 2.

### 4. Rule 403 Enjady Factors

Having found that the testimony offered by Student 2 meets the *Benally* threshold requirements, the Court must next balance the evidence's probative value against its prejudicial effect under Rule 403.

The first *Enjady* factor is "how clearly the prior act has been proved." *Enjady*, 134 F.3d at 1433. The Court must make a preliminary finding that "a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred." *Id.* To meet this factor, the government submitted an FBI 302 Report that memorializes the FBI's interview of Student 2. Defendant contends that spanking Student 2 does not constitute criminal conduct and that, therefore, his spanking of Student 2 is not clearly proven. But if Student 2 testifies consistently with her prior interview, the jury could reasonably find by a preponderance of the evidence that Defendant struck her buttocks in his classroom to humiliate or degrade her.

The second *Enjady* factor is "how probative the evidence is of the material fact it is admitted to prove." *Id.* The Tenth Circuit has instructed that district courts should consider "the similarity of the prior acts to the acts charged, the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." *Guardia*, 135 F.3d at 1331 (citations omitted).

The alleged prior act appears similar in several respects to the charged conduct. First, both the prior act and the charged conduct involve Defendant's female students. Second, the prior act occurred at school, just like much of the charged conduct. Third, when

the alleged act occurred, Student 2 was around 11 or 12 years old, the same age as Victim 1 when Defendant allegedly began his sexual conduct towards her. Fourth, based on when Student 2 asserts Defendant spanked her, the prior act and the charged conduct appear to have occurred around the same time. Concerning frequency, the government's motion asserts Defendant spanked Student 2's buttocks multiple times. The government asserts no argument concerning intervening events.

Given the similarity and timing of the alleged act and the charged conduct, the Court finds the evidence of Defendant spanking Student 2 in class to be sufficiently probative to show Defendant's propensity to inappropriately touch female students and his alleged plan or pattern of behavior "to test" his female students "to see how far he could go with them." [Doc. No. 62] at p. 24. This factor weighs heavily in favor of admitting evidence of the prior act.

The third *Enjady* factor is "how seriously disputed the material fact is." *Enjady*, 134 F.3d at 1433. The government presumes Defendant will contest the credibility of Victim 1 and Victim 2 or argue that his conduct has been misinterpreted. These defenses weigh in favor of admission of the evidence. *See United States v. Mercer*, 653 Fed. App'x. 622, 628 (10th Cir. 2016) (finding defendant's vigorous denial of the allegations and their implications weighed in favor of admission of Rule 414 evidence).

The fourth *Enjady* factor is "whether the government can avail itself of any less prejudicial evidence." *Enjady*, 134 F.3d at 1433. The government asserts that it does not

have evidence less prejudicial than Student 2's testimony. The Court finds this factor weighs neither in favor nor against the admission of Student 2's testimony.

The Court finds the *Enjady* factors, in sum, weigh in favor of admitting Student 2's testimony. But the inquiry does not stop there. To determine if admission of the evidence is unfairly prejudicial, the Court must weigh the above factors against "1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct." *Enjady*, 134 F.3d at 1433.

The Court finds that Student 2's testimony is unlikely to contribute to an improperly based jury verdict because the Court can give limiting instructions, if necessary. *See Mercer*, 653 Fed. App'x. at 629 (affirming a district court's holding that prior acts were not overly prejudicial when it stated that it would give a limiting instruction); s*ee also United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive."); *United States v. Perrault*, 995 F.3d 748, 770 (10th Cir. 2021).

Similarly, the Court finds it unlikely the evidence will distract the jury from the central issues of the trial because Defendant's common scheme or plan and his conduct toward his female students are central issues to the case and this evidence bears directly on those questions. Further, any prejudice or distraction can be minimized through use of limiting instructions. Lastly, the Court finds, it should not take much time to prove this prior act as it is a discrete act and should require the testimony of only one witness. The

8

Court, therefore, finds the probative value of Student 2's proposed testimony is not substantially outweighed by the danger of unfair prejudice.

For all these reasons, the Court finds that the government's proposed Rule 414 evidence of Defendant spanking Student 2's buttocks in the classroom should be admitted.

## B. Evidence Offered as Intrinsic to the Charged Offenses and Under Rule 404(b)

The government seeks to admit testimony from several witnesses concerning incidents of Defendant's conduct not implicated by Rule 414. The government argues this evidence should be admitted as intrinsic evidence of the crimes charged. In the alternative, the government argues that if any extrinsic evidence it should be admitted under Rule 404(b).

### 1. Intrinsic Evidence

"Rule 404(b) limits the admissibility of evidence related to other crimes or wrongs, but it only applies to evidence of acts extrinsic to the charged crime." *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (internal quotations and alterations omitted). "If the contested evidence is intrinsic to the charged crime, then Rule 404(b) is not even applicable." *Id.* at 1212; *see also United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir. 2014) ("[I]f the other-acts evidence is intrinsic to the charged crime—that is, 'inextricably intertwined' with the evidence of the charged crime—it is admissible without regard to Rule 404(b)'s prohibitions."). As stated by the Tenth Circuit:

> Generally speaking, intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense.

*U.S. v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (internal quotation marks and citations omitted). "The Tenth Circuit considers evidence intrinsic when it is inextricably intertwined with the charged conduct or the evidence is entirely germane background information, directly connected to the factual circumstances of the crime." *United States v. Ogden*, No. 20-CR-136-JFH, 2021 WL 789861, at *4 (E.D. Okla. Mar. 1, 2021) (citing *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015)).

The Court finds the following proposed testimony from nine of the witnesses meets the definition of intrinsic evidence.

- Student 1 reported that she knew Victim 1 was in Defendant's class after school-hours and that Defendant hosted an after-school tutoring program.

- Student 3 and Student 20 reported that Defendant always kept his classroom door locked with a piece of paper covering the window.

- Student 8 reported that Defendant was always around Victim 1.

- Student 10 reported that, during one of her classes in Defendant's classroom, Victim 1 came to the classroom upset. Defendant directed students to leave the classroom so he could be alone with Victim 1.

- Student 12 reported that she was friends with Victim 1 and that when the two would have sleepovers she would see text messages from Defendant on Victim 1's phone.

- Student 20 reported that Victim 1 would send her text messages asking her to come to Defendant's classroom because Victim 1 needed help. When Student 20 arrived at Defendant's classroom, the door would be locked, and it would take several minutes for Defendant to open it. Student 20 reported that Defendant often whispered in Victim 1's ear in class. Student 20 also reported Defendant was physically aggressive towards Victim 1; he would grab her arm to take her out of the classroom.

- Student 21 reported that he saw eight pictures of Victim 1 on Defendant's desk.

- R.T. reported that when he was in Defendant's class, Victim 2 was kneeling next to another student's desk when Defendant walked over to stand near Victim 2. R.T. explained that Defendant stood with his crotch inches from the back of Victim 2's head. R.T. reported that he confronted Defendant and told him to move back from Victim 2.

- Witness 2 is defendant's ex-wife. She reported that defendant often spoke about Victim 1, telling her he was a father figure for Victim 1. Witness 2 also reported that Defendant asked her to give Victim 1 some "feminine clothing" and that she saw Defendant constantly texting with Victim 1, even during late-night hours.

This testimony describes either the setting where the alleged abuse occurred or provides germane background information and insight into Defendant's relationships with Victim 1 and Victim 2. As such, the Court finds it is admissible as evidence intrinsic to the charged conduct. The remaining proposed testimony from these witnesses and from the 16 other witnesses mentioned in the government's notice and motion must be analyzed under Rule 404(b).

### 2. Rule 404(b)

Rule 404(b) provides that although "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). Four factors govern the admissibility of evidence of other crimes or wrongs under Rule 404(b): (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under

403; and (4) the court must give a proper limiting instruction if it is requested by the defendant. *United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007) (*citing Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).

When offering evidence under Rule 404(b), "the government bears the burden of showing that the proffered evidence is relevant to an issue other than character." *United States v. Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000). "The government must 'articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred' from the other acts evidence." *Id.* (quoting *United States v. Kendall*, 766 F.2d 1426, 1436 (10th Cir. 1985)); *see also United States v. Commanche*, 577 F.3d 1261, 1266 (10th Cir. 2009).

Here, the 404(b) evidence, consisting entirely of proposed testimony, breaks down into three general categories. First, several witnesses provide proposed testimony that Defendant attempted to get female students to attend his after-school tutoring by intentionally giving them poor grades or by telling their parents they needed tutoring. This category includes proposed testimony by Student 11, Student 13, Student 16, Student 17, Student 19, Student 20, and Witness 1.

Student 11 reported that, although she never struggled with math before taking Defendant's class and although she could successfully complete her math work at home, Defendant told her mother Student 11 should attend his tutoring program. Student 13 reported that her father would sometimes have to deliver her homework to Defendant and, in an attempt to get Student 13 to attend tutoring, Defendant would later say he never received the homework. Student 16 reported that Defendant told her she was failing his class and needed to attend his tutoring. Student 16, however, reported that she was not

failing Defendant's class. Student 17 reported that Defendant would try to get students to go to his tutoring program. When Student 17 went to the program, she said Defendant did not do much tutoring; instead, Student 17 said Defendant would have close conversations with female students. Student 19 and Student 20 reported that the only class in which they struggled was Defendant's math class; Defendant tried to get them to attend his tutoring program. Student 20 reported that she excelled in a college math class the year prior to taking Defendant's class. Witness 1 reported that her daughter attended Defendant's tutoring program. She claims she removed her daughter from the program because no one was watching Defendant during tutoring. She stated that when she would arrive at the school to pick her daughter up from the tutoring program, she saw Defendant chasing female students or female students sitting on Defendant's desk.

Second, the government seeks to offer testimony of several female students describing incidents where Defendant physically touched them or incidents where Defendant allowed female students to touch him in ways seemingly inappropriate for a schoolteacher. This category includes proposed testimony by Student 1, Student 4, Student 5, Student 6, Student 7, Student 8, Student 10, Student 13, Student 14, Student 15, Student 18, Student 20, and Witness 3.

Student 1 reported that, when she was in 6th grade, Defendant came up behind her, grabbed her sides, and stated, "Just making sure you're real." [Doc. No. 62-1] at p.1. Student 4, Student 7, Student 8, and Student 10 describe incidents where Defendant touched them on their lower backs, shoulders, or waists. Student 5 and Student 18 reported that, while in his classroom, Defendant picked them up, raising them in the air; Student 5

explained that Defendant flipped her upside down, exposing her underwear. Student 6 reported that Defendant once pushed her up against a wall in a school hallway. Student 14 and Student 15 describe incidents where Defendant lifted his shirt and allowed female students to touch his abdominal area. Student 20 reported that Defendant purposely bumped into her chest and made a comment about her breasts. Witness 3, a teacher at Morris Public Schools, explained that she saw Defendant slap a female student's buttocks.

Third, the government seeks to offer testimony of female students describing inappropriate comments Defendant made to them about their bodies. This category includes proposed testimony by Student 1, Student 2, Student 7, Student 9, and Student 20. Student 2 described an incident where Defendant told her that her breasts were "too jiggly." [Doc. No. 62-1] at p.3. Student 8 and Student 9 told agents Defendant told them that he liked the way their clothing made their bodies look.

The Court finds these categories of proposed testimony provide evidence that tends to demonstrate Defendant's common scheme or plan, pattern of behavior, opportunity, and absence of mistake or accident—all of which are permissible purposes under Rule 404(b). The testimony tends to show a plan or pattern of behavior of Defendant "to test" his female students "to see how far he could go with them." [Doc. No. 62] at p. 24. Further, the proposed testimony tends to demonstrate Defendant consistently attempted to create potential opportunities to be alone with female students. The Court finds these three categories of proposed testimony lay out a pattern of Defendant's conduct that is consistent with the pattern of conduct in which he allegedly engaged with Victim 1 and Victim 2.

Thus, the government offers the proposed testimony of these witnesses for permissible and relevant purposes.

The Court further finds, with one possible exception noted below, the probative value of the proposed testimony in these categories is not substantially outweighed by any of the dangers set forth in Rule 403. The similarities in Defendant's pattern of conduct described by these students and witnesses with the alleged conduct charged in the Indictment renders the proposed testimony highly probative, and any potential for unfair prejudice can be effectively mitigated by a limiting instruction. *See United States v. Hutchinson*, 573 F.3d 1011, 1030 (10th Cir. 2009) (holding that, where evidence admissible for only one purpose may "create the risk of an unfair trial[,] . . . such prejudice can usually be cured by limiting instructions to the jury").

The Court, therefore, finds that testimony describing incidents where Defendant intentionally gave female students poor grades to get them to attend his after-school tutoring, either touched female students or allowed female students to touch him in ways seemingly inappropriate for a schoolteacher, and made comments to female students about their bodies are admissible under Rule 404(b). The Court will note, however, that the number of witnesses included in this notice and motion appears excessive; the government is directed to utilize the proposed testimony of the witnesses it regards as most salient so as to avoid presentation of cumulative evidence.

## CONCLUSION

For the foregoing reasons, the government's Motion in Limine to Admit Other Evidence [Doc. No. 62] is **GRANTED**, as set forth herein. Defendant's objection to the

15

government's intended use of the proposed testimony identified herein [Doc. No. 75] is **OVERRULED**.

**IT IS SO ORDERED** this 12th day of May, 2022.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE